IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRUST BANK, | ) ) ) |
| Plaintiffs, | ) Case Number: 21-cv-02576 ) (Related Case: 21-cv-02702) ) |
| v. | ) Honorable Judge Sara L. Ellis ) |
| RUBEN YBARRA, YRY HOLDINGS, LLC, and BOULDER HILL APARTMENTS, Defendants. | ) Magistrate Judge Maria Valdez ) ) ) ) |
| CNTRUST DEBT RECOVERY, BRUCE TEITELBAUM, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| RUBEN YBARRA, YRY HOLDINGS, LLC, and BOULDER HILL APARTMENTS, Defendants. | ) ) ) ) ) |

**DEFENDANTS' COMBINED REPLY IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

NOW COME Defendants, RUBEN YBARRA ("Ybarra"), YRY HOLDINGS, LLC, ("YRY") and BOULDER HILL APARTMENTS ("BHA") (collectively, "Defendants"), by and through their attorneys, Rakesh Khanna and Christopher V. Langone, and as *Defendants' Combined Reply in Support of Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)*, state as follows:

### I. INTRODUCTION

Plaintiffs' attacks on Ruben Ybarra are an irrelevant red herring, calculated to attempt to inflame and prejudice the Court. Ruben Ybarra's conduct, more than a decade ago, which has been

1

adjudicated by the OCC, has nothing to do with the lawsuit currently pending before the Court (or the one that is allegedly threatened). This Court should not countenance such efforts.

Moreover, there is nothing wrong with a judgment debtor buying a judgment against it; the judgment creditor was willing to sell the judgment to an entity controlled by (or friendly to) the judgment debtor. There was no "fraud on the court" in state court – and if there was, then Centrust Bank, N.A. ("Centrust") and its allies, CNTRST Debt Recovery ("CDR") and Bruce Teitelbaum ("Teitelbaum") (collectively "Plaintiffs") should be taking the matter up before Judge Heneghan. Plaintiffs could have made a motion for sanctions or fees before the state court if they truly believed a "fraud" was perpetrated on that Court. Indeed, Judge Heneghan is in the best position to know if he had been deceived or defrauded in any way.

Regardless, Plaintiffs do not make an adequate showing regarding ripeness or the threat of "immediate coercive consequences" to satisfy their burden for a Declaratory Judgment, and do not state a claim for abuse of process – nor do Plaintiffs satisfy the amount in controversy.

## II. ARGUMENT

**A. Plaintiffs have not met their burden in showing there exists a actual controversy of sufficient immediacy and reality such that Plaintiffs are suffering immediate coercive consequences; a subjective "fear" of a lawsuit is not sufficient.**

Plaintiffs have not met their burden in seeking a declaratory judgment, in showing that there exists an "actual controversy" of "sufficient immediacy and reality." *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 620 (7th Cir. 1995). *Maryland Casualty Co. v. Pacific Coal Oil Co.,* 312 U.S. 270, 273 (1941) (The test to be applied to is "whether . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); *Nucor Corp. v. Aceros Y Maquilas*

*De Occidente*, 28 F.3d 572, 577 (7th Cir. 1994) (same). The test is not, as Plaintiffs suggest, whether they have a subjective fear of being sued.

The Seventh Circuit address this standard in some detail in *Nuclear Engineering Company v. Scott*, 660 F.2d 241 (7th Cir. 1981), stating: "At the time NEC's complaint was filed, the alleged controversy between it and defendant Scott was based entirely upon his April 22, 1980 announcement that he intended at some future date to bring an action against NEC alleging violations of Illinois' environmental protection laws." 660 F.2d at 252. While noting that "a plaintiff need not always await the actual commencement … proceedings … for "such an action to present a justiciable controversy the threat of enforcement must have **immediate coercive consequences** of some sort upon the plaintiff. *Id.* (emphasis added), citing *Poe v. Ullman,* 367 U.S. 497, 508 (1961). The only allegation in NEC's complaint that Scott's threatened action is causing immediate consequences to NEC is its allegation that existing and potential customers and potential investors are being lost. *Id*. The Seventh Circuit found this allegation insufficient.

In this case, there are no allegations whatsoever regarding "immediate coercive consequences." Instead, it seems Plaintiffs are simply trying to launch a pre-emptive attack to engage in forum shopping. But as the Seventh Circuit noted, "[A] suit for declaratory judgment aimed solely as wresting the choice of forum from the 'natural' plaintiff will normally be dismissed and the case allowed to proceed in the usual way. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 4321 (7th Cir. 1993).

1. **The *Nucor* factors favor Defendants.**

In *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572 (7th Cir. 1994) the Seventh Circuit articulated five factors to consider based on the Supreme Court's decision *Green v. Mansour,* 474 U.S. 64, 72-73 (1985), as follows:

>  (1) whether the judgment would settle the controversy;
>  (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>  (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*";
>  (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction, and
>  (5) whether there is an alternative remedy that is better or more effective.
>
>  (Hereinafter the "Factors")

28 F.3d at 579. Here, these Factors weigh against allowing the declaratory judgment to proceed.

First, the hypothetical threatened lawsuit could include claims other than malicious prosecution – it could include negligence or intentional interference with prospective economic advantage. For instance, the last five (5) bullet points in the demand letter all make allegations of negligence. So even if this Court "declared" Ybarra and YRY do not have a valid claim for malicious prosecution, the hypothetical lawsuit could still include claims for negligence – in other words, a declaration would not settle all claims in the controversy.

As to the second Factor, there is no "legal relations" to be declared. This case is not, for instance, a situation where an insurance company is seeking a ruling on a coverage issue. There is no pending contractual or other relationship that requires judicial interpretation.

The third Factor strongly favors Defendants, who are engaged in procedural fencing and forum shopping. As one court stated, "The wholesome purpose of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *American Automobile Insurance,* 103 F.2d at 617. And Justice Brennan once commented, "[T]he federal declaratory judgment is not a prize to the winner of the race to the courthouse.'" *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 219 (2d Cir. 1978) (quoting *Perez v. Ledesma,* 401 U.S. 82, 119 n.12 (1971) (Brennan, J., dissenting)).

4

The fourth Factor also favors refusing to make a declaratory judgment. The disputed issues are of unique interest to Illinois state courts. It involves conduct before a state judge, and an alleged "fraud" on a state court. If the threatened lawsuit was actually filed, then Defendants would be asking this court to abstain under the *Wilton-Brillhart doctrine.* See *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

The fifth Factor queries whether there is a better remedy. There is: if a state court Complaint is filed, let it play out in state court. This Court should not indulge Plaintiff's procedural fencing and forum shopping.

### 2. Centrust's arguments regarding the facts are wrong.

Centrust claims its declaratory judgment claims are fit for judicial determination because they involve purely legal questions arising out of fully developed facts. Centrust's claim, however, is not one that presents "purely legal issues." Indeed, as an intentional tort, malicious prosecution depends on intent evidence, which is not a pure legal issue and will required fact development and discovery. Defendants' statement "Centrust merely asks the Court to determine whether it committed a tort," is amusing in its use of "merely." After all, isn't every tort suit ever filed "merely" asking the court to determine whether defendant(s) committed a tort?

Plaintiffs also contradict themselves. They argue on the one hand that "the Court does not need to worry about the facts changing because the Post-Judgment Proceedings are finished" (Centrust Brf. at 6); but then, on the other hand, they argue that delay is prejudicial because "memories fade" and "exculpatory" evidence lost (Centrust Brf. at 7). If the proceedings were truly "finished," memories would not be an issue and any "exculpatory" evidence already in the record. And the issue of "fading" memories is adequately protected under the existing law of statute of limitations and doctrines such as latches. (See Factor 5, regarding alternative remedies).

5

**B.     The Diversity allegations fail to meet the amount in controversy requirement.**

Based on the authority cited in the response brief regarding the sufficiency of the citizenship allegations for the members of a limited liability company – and the fact that Defendants will represent that discovery would show YRY has no Illinois or Delaware members as of the date of the filing of this action – Plaintiffs will concede the issue regarding the sufficiency of the citizenship allegations. The amount in controversy, however, is still an issue.

It is a legal certainty that responding to subpoenas could not possibly have cost more than $75,000 in attorneys' fees. The alleged "abuse of process" is the issuance of discovery. As noted in Defendants' moving papers, discovery (apart from subpoenas) is not process. And under no circumstances would a court find reasonable this amount of money in responding to the identified subpoenas. The fact that Mr. Tannen claimed the damages in the hypothetical lawsuit is similarly irrelevant because the Declaratory Judgment Act cannot confer jurisdiction independently – if the Declaratory Judgment Act is not ripe, then the only basis for federal jurisdiction would be if the "abuse of process" claim exceeds $75,000 – and it does not.

**C.     The abuse of process allegations fail to state a claim.**

Defendants argued in their moving papers that apart from subpoenas, "discovery" is not process. Defendants cited Illinois case law on this point. Accordingly, Centrust's citation to an Arizona case (*Nienstedt v. Wetzel*, 133 Ariz. 348, 354 (1982)), interpreting Arizona law on the definition of "process" is not applicable. The fact that Arizona allows discovery to count as "process" is irrelevant; Illinois does not. Similarly, the other non-Illinois cases, interpreting non-Illinois law, have no bearing on Plaintiffs' claims in this lawsuit, which undisputedly is governed by Illinois law.

Centrust falsely states: "No Illinois court has ever held the act of issuing discovery is immune from scrutiny as an abuse of process" (Centrust Motion at 5). *Holiday Magic, Inc. v. Scott* 4 Ill. App. 3d 962 is precisely such a case. And not only was *Holiday Magic* cited by Defendants, it was block-quoted on this precise point. *Id*. at 968. Perhaps even more stunning, is that Plaintiffs do not, in either of their two briefs, discuss the Illinois Appellate Court's decision in *Sweports*, which Defendants highlighted as the Illinois Appellate Court's most recent pronouncement on the case, the case having been decided June 30, 2021. In that case, the Court rejected the notion that "filing multiple lawsuits" was not even deemed abuse of process – because even lawsuits themselves are not deemed process. Yet, Plaintiffs want this court to follow an Arizona court's decision from six decades ago rather than the Illinois Supreme Court's most recent pronouncement.

The *Sweports* case was block quoted, at length, to highlight its applicability. Plaintiffs do not address or attempt to distinguish *Sweports*. This is fatal to their argument. *Sweports* is dispositive.

Indeed, CDR/Teitelbaum cite *Sweports* only out-of-context (and Centrust does not cite *Sweports* at all). CDR/Teitelbaum cites the case for the following language: "'Process'" has been defined as any means used by the court to acquire or exercise its jurisdiction over a person or over specific property. (CDR/Teitelbaum Brf., at p. 14). But the very next sentence is: "For example, the plaintiffs' allegation that Abrams knowingly filed a time-barred derivative action is based on a "pleading" - not a court "process" - and is thus outside of the scope of an abuse of process claim." If knowingly filing a time-barred action does not constitute an abuse of process then, *a fortiori*, issuing discovery to discover potential claims does not.

There is even more that is helpful in the *Sweports* decision to Plaintiff, for instance, one of the cases relied upon by *Sweports*, and cited in the block quote, was *Erlich,* 195 Ill.App.3d at 539, where the *Sweports* case cited with approval its holding that "even if the parties made false representations to the court to obtain a temporary restraining order (TRO), the 'seeking and obtaining of a TRO was done in the regular prosecution.'" In a similar vein, even if the complained-of discovery was issued under false pretenses (or even "fraud on the court"), issuing and receiving written discovery, including subpoenas, is something that is done in regular prosecution of civil proceedings.

The *Sweports* court then noted that although not strictly required, the tort of abuse of process generally required an arrest or seizure of property. Being the recipient of unwanted discovery is hardly akin to arrest or seizure of property. This case should be dismissed.

WHEREFORE, Defendants request that Plaintiffs, Centrust Bank, N.A., CNTRST Debt Recovery and Bruce Teitelbaum's Complaints be dismissed pursuant to Federal Rules 12(b)(1) and/or 12(b)(6); and for such further and other relief as this Court deems just and proper.

    Respectfully Submitted

    **RUBEN YBARRA, YRY HOLDINGS, LLC, and BOULDER HILL APARTMENTS**, Defendants


    By: /s/ Christopher V. Langone
        One of their attorneys

Christopher V. Langone, Esq.
PO Box 5087
Skokie, IL 60077
Tel. 312-720-9191
Email: LangoneLaw@gmail.com
Attorney No. 6211105

Rakesh Khanna, Esq.
Weissberg and Associates, Ltd.
564 W. Randolph Street, 2nd Floor
Chicago, Illinois 60661
T: 312-663-0004
Email: rakesh@weissberglaw.com
Attorney No. 6243244

## **CERTIFICATE OF SERVICE**

I, Christopher V. Langone, certify that on September 20, 2021, I caused ***Defendants' Combined Reply in Support of Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)*** to be filed electronically.  Notice of these filings was sent to all parties registered with the court's CM/ECF electronic transmission system, including to the following parties:

Adam Brent Rome, Esq.
Zachary Mulcrone, Esq.
Greiman Rome & Griesmeyer LLC
205 West Randolph, Suite 2300
Chicago, IL 60606
Email: arome@grglegal.com; zmulcrone@grglegal.com

William J. Factor, Esq.
Isaiah Fishman, Esq.
FACTORLAW
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Email: wfactor@wfactorlaw.com; ifishman@wfactorlaw.com

            /s/ Christopher V. Langone
             Christopher V. Langone